## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7268 | **DATE** | 11/4/2004 |
| **CASE TITLE** | Wagner vs. Illinois Department of Public Aid | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER. The Court grants defendant's motion for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 0 5 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 48 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JD | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICIA WAGNER,                              )
                                             )
            Plaintiff,                       )
                                             )
      v.                                      )       98 C 7268
                                             )       Judge George M. Marovich
ILLINOIS DEPARTMENT OF PUBLIC AID,           )
                                             )
            Defendant.                       )

DOCKETED
NOV 0 5 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Wagner ("Wagner") filed a four-count complaint against the Illinois

Department of Public Aid ("IDPA"), alleging failure to accommodate and disparate treatment in

violation of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act,

29 U.S.C. § 794. Wagner's ADA claims have already been dismissed.

Defendant now moves for summary judgment on plaintiff's remaining claims for failure

to accommodate and disparate treatment under the Rehabilitation Act. For the reasons set forth

below, the Court grants defendant's motion for summary judgment.

## I.    Background

Defendant IDPA is an agency within the executive branch of the government of the State

of Illinois. IDPA is responsible for administering several public assistance programs, including

child support enforcement.

Wagner began working for the IDPA in 1972. For about thirteen months in 1984 and

1985, Wagner was a Family Support Specialist I ("FSS-I"). For the next ten years, between

approximately 1985 and 1995, Wagner was a Family Support Specialist II ("FSS-II") and

supervised eight to ten FSS-I's. Since April 1995, Wagner has held the title of Executive II ("E-

II") in IDPA's Division of Child Support Enforcement ("DCSE"). The E-II classification

48

includes hundreds of positions statewide. When Wagner accepted the E-II promotion, she knew she was entering a fast-paced environment.

When Wagner was first promoted to the E-II classification, she was assigned to be the Central Office Supervisor for the Intake Unit of the Cook County Bureau of Field Operations in DCSE. The Intake Unit's function was to accept and process child support applications and to determine which, if any, to refer to the State's Attorneys for legal enforcement. As Central Office Supervisor, Wager supervised the FSS-II's and the Office Services Supervisor. For her work as Central Office Supervisor, Wagner's performance was rated as "exceed expectations." In July 1996, Wagner became the Field Office Supervisor and supervised two FSS-II's, Enorris Harvey ("Harvey") and Irma Roman ("Roman"). Wagner reported to Gwendolyn Lee ("Lee").

When Wagner became Field Office Supervisor, Lee provided Wagner performance objectives. One of the objectives was to ensure that the FSS-II's and FSS-I's in her charge were performing their jobs. It was also one of defendant's policies that when an employee is absent, his or her supervisor is responsible for the absent employee's position. Thus, in the event that Roman or Harvey were absent, Wagner was responsible for his/her position as well as Wagner's own position. This part of her job ultimately became a problem for Wagner.

From September 1996 until early January 1997, Harvey took a paid sick leave. When Harvey's leave began, it was unclear how long he would be gone. (Ultimately, Harvey remained out on leave until he retired in March 1998.) With Harvey absent, legal action referrals were backed up in Wagner's department. In January 1997, Wagner asked Lee whether someone could be hired to replace Harvey. Lee checked with her supervisor to determine whether an FSS-I could be temporarily transferred to Harvey's position. Lee learned (and then informed Wagner) that due to budgetary constraints she could not transfer someone to Harvey's position.

On March 17, 1997, Wagner telephoned Shirley Spielman ("Spielman"), defendant's 504/ADA Coordinator. Wagner informed Spielman that she had been responsible for an absent subordinate's position since September 1996. Wagner told Spielman that she wanted someone to take over some of her supervisory duties. Spielman informed Wagner that hiring someone to help her perform her supervisory duties would eliminate essential functions of Wagner's position.

Although defendant did not provide Wagner a helper, it allowed her a significant amount of time off. On March 17, 1997 (the same day Wagner spoke with Spielman), Wagner left the office because she felt she could not perform her job and be responsible for Harvey's job. From March 18 to March 31, 1997, Wagner was absent from work. Despite Wagner's absences and the backlog of legal action referrals, on May 13, 1997, Wagner received a performance evaluation of "acceptable." It was eventually changed to "accomplished." On June 2, 1997, plaintiff completed a "Disability Declaration Form," on which she declared she had an anxiety condition. Plaintiff did not declare her alleged disability earlier, because she deemed it "confidential" information. From July 3 until November 4, 1997, Wagner took a medical leave of absence.

When Wagner returned on November 4, 1997, Wagner again asked Spielman to accommodate her as a supervisor. On November 7, 1997, Wagner asked to work in the new KIDS program. Wagner was transferred, and she now works as a trainer in the KIDS program. In that role, Wagner trains child support workers to use a child support computer program.

In November 1999 and June 2000, plaintiff applied for promotions, which she did not receive.

All of the facts outlined above are undisputed. In her *Statement of Additional Material Facts*, plaintiff asserts the following disputed conclusion of law: "In 1997, Plaintiff suffered from

a disability that substantially limits her in the major life activities of sleeping, thinking, and interacting with others, both at and outside of work, as compared to the general population." It is undisputed that plaintiff "has taken prescription drugs for either heart palpitations, Graves Disease, an anxiety condition, or a bipolar II disorder since 1987." This is the entirety of the evidence plaintiff has put forth in her *Statement of Additional Material Facts* to support her claim that she suffers a disability within the meaning of the Rehabilitation Act.

Although the Court is not required to comb through the record in search of evidence to support a party's claim, it has searched and found the following (presumably disputed) facts.[1] On March 25, 1997, plaintiff first saw Ted Temkin, Ph. D ("Dr. Temkin"), a clinical psychologist. Plaintiff complained to him of panic attacks, nervousness, heart palpitations, crying spells, difficulty falling asleep, being startled from sleep and being unable to focus. Plaintiff reported to Dr. Temkin that during March and April 1997, she went to bed between 8:00 and 9:00 p.m. and did not fall asleep until 1:00 p.m. and that she was startled from sleep almost every night. Plaintiff told Dr. Temkin that she could communicate with her supervisor only via e-mail. Plaintiff also reported to Dr. Temkin that from March to October 1997, plaintiff chose to spend time in her room rather than spend time with her roommate, at whom plaintiff yelled. Plaintiff has taken Paxil and Xanax, prescribed to her by Edna Pamatmat, M.D. ("Dr. Pamatmat"). Plaintiff states in her affidavit that even in a medicated state in 1997, she was unable to fall into sleep for hours after going to bed and was startled from sleep most nights.

---

[1]Typically, the Court would not search the record for facts in support of a party's claim because that would be profoundly unfair to the opposing party. The opposing party would be deprived of the opportunity either (a) to dispute the facts or (b) to show that a particular fact is not disputed because, for example, a plaintiff attempted to use an affidavit to contradict prior sworn deposition testimony. In this case, the defendant is not prejudiced because the Court concludes that even in light of these additional facts, defendant is entitled to judgment as a matter of law.

Plaintiff alleges that defendant violated the Rehabilitation Act by failing to provide her with a reasonable accommodation. Plaintiff also argues that defendant discriminated against her on the basis of her disability when, in 1997, it required her to use paid sick time before she could qualify for disability benefits and when it failed to assign her work when she returned on November 4, 1997. Plaintiff further claims that in 1999 and 2000, she was denied promotions for which she applied.

## II.   Summary Judgment Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Courtney v. Biosound, 42 F.3d 414, 418 (7th Cir. 1994).

## III.   Discussion

The standards set out in the ADA are used in evaluating a claim under the Rehabilitation Act. Dyrek v. Garvey, 334 F.3d 590, 597 n. 3 (7th Cir. 2003); 29 U.S.C. § 794(d). In order to prevail on her failure to accommodate claim, a plaintiff must establish that: (a) she has a disability; (b) she is a qualified individual; and (c) defendant failed to provide a reasonable accommodation. Basith v. Cook County, 241 F.3d 919, 927 & 932 (7th Cir. 2001). In order to establish a *prima facie* case of disparate treatment under the Rehabilitation Act, the plaintiff must

establish that: (a) she is disabled; (b) she is a qualified individual; (c) she suffered an adverse employment decision under circumstances that suggest it was due to her disability. See Buie v. Quad/Graphics, Inc., 366 F.3d 496, 503 (7th Cir. 2004). A common element of both of plaintiff's claims is that she be disabled, and that is the element on which most of her claims fail.

The Rehabilitation Act defines disability as "a physical or mental impairment that substantially limits one or more major life activities," and a person is considered disabled for purposes of the Rehabilitation Act if she "is regarded as having such an impairment." 29 U.S.C. §§ 705(9), 705(20)(A). Major life activities are "those activities that are of central importance to daily life." Toyota Motor Mfg. Ky, Inc. v. Williams, 534 U.S. 184, 196 (2002). The EEOC lists as major life activities "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).[2]

Substantially in the phrase "substantially limits" means "considerable" or "to a large degree." Toyota, 534 U.S. at 196. The plaintiff's impairment–in its corrected state–must be so limiting, relative to someone in the general population. Sutton v. United Air Lines, Inc., 527 U.S. 471, 488-489 (1999); Peters v. City of Mauston, 311 F.3d 835, 843 (7th Cir. 2002). The standard for qualifying as disabled is "demanding," and the terms in the definition of disability "need to be interpreted strictly." Toyota, 534 U.S. at 197. To establish that they have a disability, plaintiffs must offer "evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." Toyota, 534 U.S. 198 (citing Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 567 (1999)). The "impairment's impact must be

---

[2]The Supreme Court has noted that no agency was given authority to promulgate regulations interpreting "disability" and, hence, has not decided what deference the regulations deserve. Toyota, 534 U.S. at 194.

-6-

permanent or long term." Toyota, 534 U.S. at 198. Finally, a plaintiff must put forth evidence that she is so limited as of the time of the alleged discrimination, i.e., as of the time of the alleged failure to accommodate or the alleged disparate treatment. See Vandeveer v. Fort James Corp., 192 F. Supp.2d 918, 935 (E.D. Wis. 2002).

## A.    Plaintiff's 1997 claims.

Plaintiff claims that defendant discriminated against her by failing to provide a reasonable accommodation when she requested one in 1997. Plaintiff further claims that defendant subjected her to disparate treatment on the basis of her disability when it required her to exhaust her paid sick time before she was entitled to disability and when it allegedly failed to give her work when she returned on November 4, 1997. In order to survive summary judgment on these claims, plaintiff must put forth sufficient evidence that she has a disability within the meaning of the Rehabilitation Act.

Here, Wagner claims to be substantially limited as to working, thinking, concentrating, interacting with others and sleeping, all of which she asserts are major life activities. Although the Court questions whether all of these constitute major life activities for purposes of the Rehabilitation Act, it will assume, without deciding, that these are major life activities. Because plaintiff has not put forth sufficient evidence from which a reasonable juror could conclude that she is substantially limited in any of her asserted major life activities or that the defendant regarded her as substantially limited, plaintiff is not, as a matter of law, disabled.

In order to show that one is substantially limited in the major life activity of working, it is not sufficient to show that one is unable to perform a single job. Rather, one must show she is unable to perform either a class of jobs or a broad range of jobs in various classes. EEOC v.

Rockwell Int'l Corp., 243 F.3d 1012, 1017 (7th Cir. 2001). This means that a plaintiff must come up with "some proof of the 'number and types of jobs' within the 'geographical area to which [claimant] has reasonable access.'" Rockwell, 243 F.3d at 1017. In Rockwell, for example, the Seventh Circuit explained that the EEOC was required to supply evidence of the "number and types of other jobs in Southern Illinois from which the job applicants were excluded" because of their impairment. 243 F.3d at 1017. Here, plaintiff has failed to supply any evidence of the number and types of jobs from which she is restricted due to her impairment. To the contrary, she has been performing the job as trainer in the KIDS program and stated in her affidavit that the reason she was unable to do her prior job at IDPA was that it required her to do both her own job and the job of a subordinate. This is not evidence that plaintiff's impairment prevents her from a class of jobs or a broad range of jobs. Likewise, the fact that defendant gave her the position she requested–trainer for the KIDS program–suggests it did not regard her as being substantially limited in her ability to work. Plaintiff has put forth no evidence to suggest that defendant perceived her as being unable to perform a class of jobs or a broad range of jobs in various classes. As a matter of law, plaintiff is not substantially limited in the major life activity of working.

Next, plaintiff asserts that she is substantially limited in her ability to think and concentrate. The record is devoid of evidence of any such limitation. To the contrary, the record reflects that plaintiff received positive performance evaluations and has not had trouble performing her job as trainer in the KIDS program. As a matter of law, plaintiff is not substantially limited in thinking or concentrating.

Plaintiff also asserts that she is substantially limited in the major life activity of interacting with others. Plaintiff bases this argument on the fact that she preferred communicating with one of her supervisors, Lee, via e-mail, rather than in person. Also, for a period of seven months, plaintiff spent four or five nights per week in her room instead of interacting with her roommate. An inability to get along with one's supervisor or roommate does not constitute a disability. Palmer v. Circuit Court of Cook Cty., 117 F.3d 351, 352 (7th Cir. 1997); Weiler v. Household Finance Corp., 101 F.3d 519, 524 (7th Cir. 1996). This is particularly true when the plaintiff has successfully performed her job as a trainer (a job that involves constant interaction with others). As a matter of law, plaintiff is not substantially limited in her ability to interact with others.

Finally, plaintiff asserts that she is substantially limited in her ability to sleep. Plaintiff informed her psychologist that during April and May 1997, she went to bed between 8:00 and 9:00 and did not fall asleep until 1:00. With respect to the rest of 1997, plaintiff's evidence is vague: that she did not fall asleep until hours after going to bed and she was startled from sleep. This evidence, however, is not evidence that plaintiff is substantially limited relative to other people, many of whom also have trouble falling asleep and wake up in the night. See EEOC v. Sara Lee Corp., 237 F.3d 349, 352-353 (4th Cir. 2001) ("Many individuals fail to receive a full night of sleep. The EEOC did not show that Turpin's seizures substantially limited her major life activity of sleeping in a manner different from the average person."). Plaintiff supplies no evidence with respect to the number of hours she was able to sleep each night or whether a lack of sleep impaired her ability to function in other ways. It cannot be said that someone is substantially limited in her ability to sleep where she gets six or eight hours of sleep each night

even if she is unable to fall asleep until after midnight. Thus, without such evidence, a reasonable jury could not conclude that plaintiff suffered a substantial limitation–which was severe and long-term–in her ability to sleep.

Because plaintiff has not put forth sufficient evidence from which a reasonable jury could conclude that she has a disability–an essential element of her claims–defendant is entitled to judgment as a matter of law with respect to her claims for failure to accommodate and for disparate treatment in 1997.

### B.    Plaintiff's 1999 and 2000 claims

Plaintiff also contends that she was subjected to disparate treatment in violation of the Rehabilitation Act when she was denied two promotions, one in 1999 and one in 2000. Specifically, on November 5, 1999, Wagner applied for but did not receive a vacant position of public service administrator in the Division of Child Support Enforcement. On June 6, 2000, Wagner applied for but did not receive a vacant position in the Policy Resource Center. Plaintiff supplies no information as to whom (if anyone) defendant ultimately hired for those positions or whether the individuals hired for those positions were disabled.

Defendant first argues that plaintiff has failed to exhaust her administrative remedies with respect to the denial of promotion claims in that these claims are beyond the scope of the charge of discrimination plaintiff filed with the EEOC in 1997. Were plaintiff's claims brought under the ADA, defendant's argument would be well-taken. An individual suing an entity other than the federal government under § 504 of the Rehabilitation Act, however, is not required to exhaust administrative remedies. See Freed v. Consolidated Rail Corp., 201 F.3d 188, 192-194 (3rd Cir. 2000); Brennan v. King, 139 F.3d 258, 268 n. 12 (1st Cir. 1998); Binetti v. Illinois Dep't of

<u>Trans.</u>, Case No. 94 C 2694, 1994 U.S. Dist. Lexis 18286 at * 7 (N.D. Ill. Dec. 22, 1994). The remedies, procedures and rights applicable to § 504 of the Rehabilitation Act are those applicable to Title VI of the Civil Rights Act of 1964, and nothing in the language of Title VI or § 504 requires exhaustion. <u>See</u> 29 U.S.C. § 794a(a)(2). Accordingly, plaintiff was not required to exhaust administrative remedies.

Still, plaintiff's failure to promote claims fail because she has not put forth sufficient evidence to create an issue of fact on each element of the *prima facie* case of discrimination. Specifically, plaintiff has put forth no evidence suggesting that defendant's failure to promote her was in any way related to her alleged disability. Plaintiff has put forth no evidence that the two positions for which she applied were ever filled or were filled by individuals who did not suffer a disability. Furthermore, at the time Wagner applied for the two positions, she was already working for defendant as a KIDS program trainer, which suggests a lack of discriminatory animus with respect to plaintiff's alleged disability. Because plaintiff fails to put forth sufficient evidence with respect to an essential element of the *prima facie* case, the Court need not consider whether she put forth sufficient evidence with respect to the remaining elements of the *prima facie* case.

Wagner has failed to put forth sufficient evidence to create an issue of fact on essential elements of her claims, and defendant is entitled to judgment as a matter of law.

## IV.    Conclusion

For the reasons set forth above, the Court grants defendant's motion for summary
judgment.

ENTER:

George M. Marovich
United States District Judge

DATED: Oct. 29 2004